UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMAL FREEMAN,<br><br>Defendant. | CRIMINAL ACTION NO.<br><br>1:24-CR-00064-SEG-RGV-1 |

**ORDER**

This case is before the Court on the Magistrate Judge's Report and Recommendation ("R&R"). (Doc. 150.) The Magistrate Judge recommends that Defendant Jamal Freeman's motion to suppress evidence and statements (Doc. 19, 30) be granted in part and denied in part, and that Defendant Freeman's motion for an evidentiary hearing in support of a motion to dismiss based on government interference with defense (Doc. 76) be denied. Mr. Freeman filed objections to the R&R. (Doc. 161.) After careful consideration, the Court enters the following order.

## I. Background[1]

On February 27, 2024, a grand jury returned an indictment charging Mr. Freeman with conspiring to possess with intent to distribute less than 50 kilograms of marijuana and methamphetamine in violation of 21 U.S.C. § 846, possession of the same with intent to distribute in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. § 2, possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.)

Mr. Freeman filed a motion to suppress certain evidence and alleged statements. (Doc. 19, 30.)[2] Mr. Freeman argued that he was seized pursuant to an illegal traffic stop made by Atlanta Police Department ("APD") Officer Cody Swanger. (Doc. 19 ¶¶ 2–3.) Mr. Freeman further argued that Officer Swanger fraudulently deceived Mr. Freeman and his passenger, co-defendant Chanel Lamb, into admitting that they were in possession of marijuana, and that Officer Swanger used those incriminating statements as a basis to search

---

[1] The facts and procedural history are set forth comprehensively in the Magistrate Judge's R&R. (Doc. 150 at 3–16.) The Court has also independently reviewed the record.

[2] Mr. Freeman filed a motion to suppress at docket number 19 and a two-page "motion to supplement motion to suppress evidence and statements" at docket number 30. The Court considers these two filings together as Mr. Freeman's motion to suppress.

the vehicle that Mr. Freeman was driving. (*Id.* ¶¶ 3–4.) The search produced the drugs and firearms with which Mr. Freeman was charged. (*Id.* ¶ 2.) Mr. Freeman moved to suppress the drugs, firearms, and incriminating statements. (Doc. 19, 30.)

Mr. Freeman also moved for a hearing to determine whether the Government interfered with his defense. (Doc. 76.) Mr. Freeman had intended to call an expert witness, James Banks, to testify at the hearing on Mr. Freeman's motion to suppress. (*Id.* ¶ 5.) But before the hearing, the Government raised with the Court a possible conflict based on Mr. Banks's employment with a contractor that provided services to the Government. (*Id.* ¶¶ 2–3.) Mr. Banks's employer then prohibited Mr. Banks from testifying as an expert witness for the defense. (*Id.* ¶¶ 4–5.)

The Magistrate Judge recommends that the Court largely deny Mr. Freeman's motions to suppress. (Doc. 150.) After an evidentiary hearing and extensive supplemental briefing, the Magistrate Judge determined that Officer Swanger had two legal grounds for stopping the vehicle that Mr. Freeman was driving: reasonable suspicion of a seatbelt violation and probable cause for changing lanes without a signal. (*Id.* at 30–42.) The Magistrate Judge determined that the smell of marijuana during the traffic stop provided probable cause for Officer Swanger to search the vehicle. (*Id.* at 42–54.) The

Magistrate Judge also determined that Officer Swanger was authorized to search Mr. Freeman on two legal grounds: the search-incident-to-arrest exception and the inevitable discovery doctrine. (*Id.* at 55–58.) Although the Magistrate Judge recommends granting Mr. Freeman's motion to suppress his testimonial act of retrieving and producing a small baggie of marijuana during the traffic stop, the Magistrate Judge recommends that Mr. Freeman's motion to suppress otherwise be denied. (*Id.* at 59–71.)

The Magistrate Judge also recommends that Mr. Freeman's motion for an evidentiary hearing about alleged government interference with Mr. Banks also be denied. (*Id.* at 17–22.) The Magistrate Judge determined that Mr. Freeman failed to show a violation of his due process rights sufficient to warrant a hearing because Mr. Banks's testimony would not have been relevant to the motion to suppress. Mr. Freeman filed objections to the Magistrate Judge's recommendations to deny the motion to suppress and motion for evidentiary hearing. (Doc. 161.)

## II. Standard of Review

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *See United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection

on a *de novo* basis and any non-objected portion under a "clearly erroneous" standard. "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

## III. Discussion

Mr. Freeman brings 13 enumerated objections to the Magistrate Judge's R&R. (Doc. 161.) The Court reviews each objected-to portion of the R&R *de novo* in light of these objections.

### A. Reasonable Suspicion for the Stop—Seatbelt Violation

The Magistrate Judge found that Officer Swanger had reasonable suspicion to stop Mr. Freeman for a seatbelt violation based on Officer Swanger's testimony. (Doc. 150 at 35–38.) The Magistrate Judge cited Officer Swanger's testimony that he was approximately eight to ten feet away from the vehicle that Mr. Freeman was driving when he observed that the occupants were not wearing seatbelts. (*Id.* at 35.) The Magistrate Judge further cited Officer Swanger's testimony about his experience observing passing vehicles for possible seatbelt violations and Officer Keleon Boatley's testimony that Officer Swanger contemporaneously told Officer Boatley that he (Swanger) observed a seatbelt violation. (*Id.* at 35–37.)

Mr. Freeman objects to the Magistrate Judge's conclusion that Officer Swanger had reasonable suspicion to stop the vehicle that Mr. Freeman was driving based on a seatbelt violation. (Doc. 161 ¶¶ 1, 8.) Mr. Freeman argues that the officers' body camera videos contradict Officer Swanger's testimony because the videos show that the seatbelts were attached into their respective receivers behind Mr. Freeman and Ms. Lamb after they were stopped. (*Id.* ¶ 1.) Mr. Freeman also argues that Officer Swanger's view into the vehicle was obstructed by the speed of the vehicle, dusk, and the tint of the windows. (*Id.* ¶¶ 1, 8.) Mr. Freeman further argues that Officer Swanger's testimony is contradicted by the fact that Officer Boatley did not observe a seatbelt violation and that Officer Swanger told Mr. Freeman during the traffic stop he was being stopped for changing lanes without signaling, not for a seatbelt violation. (*Id.*)

During the hearing, the Government asked Officer Swanger about how he observes passing cars for potential seatbelt violations. He testified, "I'm looking to see if the strap—if I can see the strap between their shoulder and the back where you would normally see it, where it's attached to the vehicle." (Doc. 119 at 26.) Officer Swanger further explained, "[Mr. Freeman] was leaning forward, which made it easier to see the gap between his back and the chair. And I could not see the seat belt connected." (*Id.*) Although Officer

Boatley did not see the seatbelt violation (*id.* at 142), he testified that he heard Officer Swanger say that he noticed a seatbelt violation at the time (*id.* at 154).

The Magistrate Judge had the opportunity to hear the officers' testimony and assess their credibility concerning the alleged seatbelt violation. Officer Swanger clearly explained that he looks for the seatbelt strap between a vehicle occupant's shoulder and the point at which the strap is attached to the vehicle. (*Id.* at 26.) The video showing that Mr. Freeman's and Ms. Lamb's seatbelts were attached *behind* them moments after being stopped is entirely consistent with Officer Swanger's testimony that he could not see a seatbelt strap extended from the car to Mr. Freeman's shoulder—where it would cross *in front of* him. And, as the Magistrate Judge points out, the video showing neither Mr. Freeman nor Ms. Lamb wearing their seatbelts immediately after the stop is consistent with Officer Swanger's testimony that he observed them with no seatbelt before the stop. (*See* Doc. 150 at 37.)

Further, Mr. Freeman cites no testimony or other evidence sufficient to undermine the Magistrate Judge's determination that Officer Swanger could see into the vehicle well enough to observe the seatbelt violation as he described. The Court has indepently reviewed the video evidence, and though it does not capture the seatbelt violation, it shows that Mr. Freeman was stopped in the daylight. (Doc. 104.) The videos also support Officer Swanger's

testimony that he could see through the vehicle's windows well enough to observe the presence or absence of a seatbelt extending to an occupant's shoulder. (*Id.*) In sum, the evidence supports the Magistrate Judge's finding that Officer Swanger observed Mr. Freeman and/or Ms. Lamb not wearing seatbelts. Mr. Freeman's objections on this point are overruled.

### B. Probable Cause for the Stop—Failure to Signal

The Magistrate Judge found that Officer Swanger had probable cause to stop Mr. Freeman based on Mr. Freeman's failure to signal his lane change. (Doc. 150 at 39–42.) The Magistrate Judge cited Officer Swanger's testimony that there was a silver sedan traveling between the officer's patrol car and the vehicle that Mr. Freeman was driving. (*Id.* at 4 n.8.) The officers also testified that Mr. Freeman was driving in a high traffic area. (*Id.*) The Magistrate Judge also cited the video evidence. (*Id.* at 40.)

Georgia law provides the following requirements for signaling turns and lane changes.

> (a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Code Section 40-6-120 or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section.

> (b) A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

O.C.G.A. § 40-6-123.

Mr. Freeman objects to the Magistrate Judge's finding that Officer Swanger observed Mr. Freeman commit a traffic violation by changing lanes without using a signal. (Doc. 161 ¶ 2.) He further objects to the Magistrate Judge's finding that he did not dispute that he failed to signal his lane change. (*Id.* ¶ 3.) Mr. Freeman argues that he was stopped on a Saturday, not during rush hour. He contends that the record does not establish that there was another vehicle close enough to require his use of a signal when he changed lanes.

The Court overrules this objection. As the Magistrate Judge explained, whether Mr. Freeman is guilty of a traffic violation is not the relevant inquiry. Under Georgia law, when a driver fails to signal a lane change in the presence of other vehicles, there is sufficient probable cause for a traffic violation. *See Buffington v. State*, 494 S.E.2d 272, 273 (Ga. Ct. App. 1997) (holding that an officer had probable cause to conduct a traffic stop because the defendant changed lanes without signaling while "in front of another vehicle" in violation of O.C.G.A. § 40–6–123). The testimony of the officers credibly establishes that

there was at least one other vehicle behind Mr. Freeman, in addition to the officers' patrol car, when Mr. Freeman changed lanes. The video evidence further establishes that there were other vehicles in the vicinity at the time of the traffic stop. An image captured from Officer Swanger's dash camera is depicted below. It shows the traffic conditions at the time of the stop, including a silver sedan in front of the patrol car and the vehicle Mr. Freeman was driving immediately to the left.




(Doc. 104-2 at 00:07.) The Court finds that this record establishes probable cause for a traffic violation. Mr. Freeman's objections on this point are overruled.

**C. Probable Cause to Search the Vehicle—Smell of Marijuana**

The Magistrate Judge determined that Officer Swanger smelling marijuana provided probable cause to search the vehicle that Mr. Freeman was driving under the automobile exception to the Fourth Amendment prohibition of warrantless searches. (Doc. 150 at 42–54.) The Magistrate Judge cited Officer Swanger's testimony that he smelled marijuana as he approached the vehicle to speak to Mr. Freeman. (*Id.* at 43.) The Magistrate Judge also cited Officer Boatley's testimony that Officer Swanger touched his nose as they approached the vehicle as a signal that he smelled marijuana. (*Id.*) Also, the video evidence shows that Mr. Freeman did not dispute Officer Swanger's assertion that he smelled marijuana. (*Id.* at 43–44.)

Mr. Freeman objects to the Magistrate Judge's determination that Officer Swanger had probable cause to conduct a warrantless search of the vehicle Mr. Freeman was driving. (Doc. 161 ¶ 10.) Mr. Freeman argues that the officers cannot rely on probable cause based on the odor of marijuana because the officers found hemp in the vehicle, which is a legal substance, and because Officer Swanger's testimony is not credible.

Mr. Freeman's objection is unpersuasive. Although hemp is a legal product, the Eleventh Circuit continues to recognize the precedent "that an officer's credible testimony that he smelled marijuana can establish probable

cause." *United States v. Dixon*, 901 F.3d 1322, 1339 (11th Cir. 2018) (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991)). For now, "[t]he legalization of hemp and medical marijuana has not altered this entrenched authority." *United States v. Anthony*, No. 8:24-CR-178-JLB-CPT, 2026 WL 2389753, at *6 (M.D. Fla. Aug. 17, 2026) (citing *United States v. Green*, No. 24-12642, 2025 WL 1911522, at *4 (11th Cir. July 11, 2025), and *United States v. Wardlow*, No. 25-10341, 2025 WL 1905372, at *1, 3–4 (11th Cir. July 10, 2025)). This is because, as the Magistrate Judge explained, "[t]he probable cause standard 'does not require officers to rule out . . . innocent explanations' for a defendant's conduct." *Green*, 2025 WL 1911522, at *4 (quoting *D.C. v. Wesby*, 583 U.S. 48, 61 (2018)).

The Magistrate Judge did not err in crediting Officer Swanger's testimony on this issue. The Court agrees with the Magistrate Judge that Officer Swanger's testimony that he smelled marijuana is corroborated by Officer Boatley's testimony that Swanger indicated he smelled marijuana at the time and that Boatley eventually smelled marijuana too. It is also corroborated by the fact that marijuana was, in fact, present in the vehicle. The fact that Officer Swanger used a deceptive technique to convince Mr. Freeman to produce a bag of marijuana does not undermine Officer Swanger's

testimony that he smelled marijuana in the first place. Mr. Freeman's objections on this issue are overruled.

### D. Grounds for Searching Mr. Freeman's Person

The Magistrate Judge determined that the search of Mr. Freeman's person, which produced two firearms, was justified under the search incident to arrest exception to the Fourth Amendment prohibition of warrantless searches and under the inevitable discovery doctrine. (Doc. 150 at 55–58.) The Magistrate Judge found that Officer Swanger properly ordered Mr. Freeman to exit the vehicle to pat him down for weapons and properly arrested Mr. Freeman for obstruction after he refused to exit.

Mr. Freeman objects to the Magistrate Judge's conclusions that the search incident to arrest exception and the inevitable discovery doctrine are legal grounds for the search of Mr. Freeman's person. (Doc. 161 ¶ 12.) Mr. Freeman argues that he did not commit the offense of obstruction, and that Officer Swanger and Officer Boatley lacked a legal basis for ordering Mr. Freeman out of the vehicle or placing him in handcuffs.

The Magistrate Judge's conclusions are supported by the facts and the law in this case. "During a lawful traffic stop, an officer may order the occupants to exit the vehicle." *United States v. Wilson*, 662 F. App'x 693, 696 (11th Cir. 2016) (citing *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir.

2009)). The Magistrate Judge cited the testimony and the video evidence showing that Mr. Freeman refused to exit the vehicle and resisted the officers' attempts to remove him from the vehicle. (Doc. 150 at 56.) Regardless of whether the officers had reasonable suspicion to conduct a pat-down search for weapons before this point, Mr. Freeman's resistance supported probable cause for an arrest on obstruction charges. *See Harris v. Wingo*, 845 Fed. App'x. 892, 896 (11th Cir. 2021) ("[P]robable cause exists to arrest an individual for resisting an officer without violence when that individual disobeys a command by a law enforcement officer."). Further, the probable cause search of the car, supported by Officer Swanger's smelling marijuana, would have inevitably led to the discovery of suspected methamphetamine, and in turn, Mr. Freeman's arrest and search incident to arrest. Mr. Freeman's objections on this issue are overruled.

Mr. Freeman also objects to various factual findings that the Magistrate Judge made about the process of Mr. Freeman's arrest. (Doc. 161 ¶¶ 4–6.) First, the Magistrate Judge found, "Freeman grabbed Officer Swanger's taser and put his fingers on the trigger, prompting Officer Swanger to yell that he was grabbing his taser." (Doc. 150 at 10–11.) In a footnote, the Magistrate Judge noted, "Officer Swanger testified that Freeman first tased himself by grabbing onto the taser and that the second time occurred when he drive-

stunned Freeman with the taser." (*Id.* at 11 n.15.) Also, the Magistrate Judge found that "Officer Boatley seized a bag that contained a green leafy substance and 2.4 pounds of suspected methamphetamine" from the vehicle that Mr. Freeman was driving. (*Id.* at 12.) Mr. Freeman objects to these portions of the R&R. (Doc. 161 ¶¶ 4–6.)

Mr. Freeman provides no basis for these objections. *See Marsden*, 847 F.2d at 1548 ("Frivolous, conclusive, or general objections need not be considered by the district court."). The Court has reviewed the record upon which the Magistrate Judge made these observations, specifically the hearing transcript and the body camera footage, and finds that they support the Magistrate Judge's findings. Mr. Freeman's fourth, fifth, and sixth objections are overruled.

**E. Grounds to Exclude Mr. Freeman's Testimonial Acts**

The Magistrate Judge recommends that the Court grant Mr. Freeman's motion to suppress any statements related to his act of producing a small bag of marijuana at the request of Officer Swanger. (Doc. 150 at 59–70.) This recommendation is based on the Government's failure to prove that Mr. Freeman's decision to produce the marijuana was voluntary in light of Officer Swanger's deceptive promises of leniency. (*Id.* at 66–70.) However, the Magistrate Judge found that Officer Swanger was not required to administer

a *Miranda* warning before asking Mr. Freeman to produce any marijuana because Mr. Freeman was not in custody at the time. (*Id.* at 61–66.)

Mr. Freeman objects to the Magistrate Judge's determination that he was not in custody at the time Officer Swanger requested that he produce any marijuana in his possession. (Doc. 161 ¶ 13.) Mr. Freeman argues that this exchange was custodial because Officer Swanger had obtained Mr. Freeman's driver's license, had him turn off his car, and told him his car smelled of marijuana.

"Generally, a person temporarily detained pursuant to an ordinary traffic stop is not 'in custody' for the purposes of *Miranda*." *United States v. Crawford*, 294 F. App'x 466, 473 (11th Cir. 2008) (citing *Berkemer v. McCarty,* 468 U.S. 420, 440 (1984)). "However, a stopped motorist is considered 'in custody' if he is subjected to treatment during the traffic stop that amounts to a restriction of freedom to a degree associated with a formal arrest." *Id.* In determining whether a motorist was subject to such restriction, courts "consider the totality of the circumstances, including whether the officers brandished weapons or touched the defendant, whether the officers used a language or tone indicating that compliance with their orders could be compelled, and the location and length of the detention." *United States v. Ubaldo-Viezca*, 398 F. App'x 573, 579 (11th Cir. 2010) (citing *United States v.*

*Luna–Encinas,* 603 F.3d 876, 881 (11th Cir. 2010)). The defendant bears the burden of establishing that he was in custody. *See United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977); *see also United States v. Peck*, 17 F. Supp. 3d 1345, 1354 (N.D. Ga. 2014) ("[T]he Court is bound to apply [the assignment of the burden established in] *de la Fuente*.").

Mr. Freeman has not shown that he was in custody for purposes of *Miranda*. No officers brandished weapons or touched Mr. Freeman during Officer Swanger's "spiel" about marijuana and his request for Mr. Freeman to surrender it. Officer Swanger's tone was measured and conversational. At the time of the "spiel," the police encounter had been a brief one on a public street. *See Crawford*, 294 F. App'x at 474 (holding that the defendant was not in custody for *Miranda* purposes where he "was standing at the back of his car in a parking lot open to public view, he was not physically restrained, he was questioned only briefly and he was not told he was going to be arrested."); *see also United States v. Cepeda-Chico*, No. 619CR217ORL31LRH, 2020 WL 6949002, at *3 (M.D. Fla. June 29, 2020) ("The questioning by the [highway patrol] and K9 officers [about possible marijuana possession] did not rise to the level of a custodial interrogation. The brief questioning occurred during a lawful traffic stop.") Officer Swanger suggested that he was going to issue Mr. Freeman and Ms. Lamb a ticket instead of taking them to jail for marijuana

possession. In fact, the video evidence shows that Mr. Freeman was surprised when Officer Swanger subsequently ordered him out of the car and Officer Boatley told Mr. Freeman that he was being detained. Mr. Freeman identifies no authority finding that an officer holding a driver's license or asking a motorist to turn off his ignition turns an ordinary traffic stop into a custodial event. Under the totality of the circumstances, the Court finds that Mr. Freeman was not in custody in this case before Officer Swanger ordered him out of the vehicle. This objection is overruled.

### F. Motion for a Hearing on Government Interference with Mr. Banks's Testimony

#### 1. Procedural History

On March 14, 2025, counsel for Mr. Freeman notified the Government that it intended to call James Banks as an expert witness at the hearing on Mr. Freeman's motion to suppress. (Doc. 79 at 5–6; Doc. 150 at 17.) Mr. Banks is a former Deputy U.S. Marshal and was working as a contractor for the U.S. Attorney's Office in this district. (Doc. 150 at 17.) Mr. Freeman intended to offer Mr. Banks's testimony about the procedures and practices of the "APEX Unit" of the APD, of which the arresting officers Swanger and Boatley were members. However, Mr. Banks was not a member of the APEX unit and had

no personal knowledge of the search and seizure that Mr. Freeman sought to challenge in his motion to suppress. (*Id.* at 17–18.)

On the night of March 17, 2025, the Government, with the consent of Mr. Freeman, sought to continue the hearing on Mr. Freeman's motion to suppress to "review and evaluate the potential conflicts of interest with respect to" Mr. Banks's testimony. (Doc. 70 at 2.) The next day, the Magistrate Judge called a status conference about the Government's consent request. (Doc. 71, 81.) The Government explained that it believed Mr. Banks's testimony may be subject to restriction pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). (Doc. 81 at 4.) Counsel for Mr. Freeman disagreed that *Touhy* regulations would apply to Mr. Banks because Mr. Banks was a contractor, not a government employee. (*Id.* at 5.) However, Mr. Freeman did not oppose the Government's request to continue the hearing on his motion to suppress so the Government could evaluate the *Touhy* issue. (*Id.* at 7.) The Magistrate Judge granted the Government's motion to continue. (*Id.* at 14.)

The Magistrate Judge held another status conference on April 4, 2025, at the request of the Government. (Doc. 75, 79.) The Government reported to the Magistrate Judge that it had contacted Mr. Banks's employer, FSA, about his potential testimony, and that FSA had asked Mr. Banks to complete a conflict-of-interest form for permission to testify as an expert witness for Mr.

Freeman. (Doc. 79 at 4.) Per the Government, after Mr. Banks filled out the conflict-of-interest form, FSA denied him permission to testify. (*Id.*) The parties continued to express disagreement as to whether *Touhy* applied to Mr. Banks's testimony. (*Id.* at 5–6.) Mr. Freeman moved for another, 60-day continuance of the hearing on his motion to suppress. (*Id.* at 6.) The Magistrate Judge set an *ex parte* hearing with Mr. Freeman's counsel to discuss Mr. Banks's testimony and the need for a continuance. (*Id.* at 8–10.)

Mr. Freeman filed a motion for a hearing to determine whether the Government unlawfully interfered with his constitutional rights with respect to Mr. Banks's testimony. (Doc. 76.) The Magistrate Judge held an *ex parte* conference with counsel for Mr. Freeman on April 14, 2025. (Doc. 78, 89.) The Magistrate Judge granted Mr. Freeman's motion to continue the hearing on his motion to suppress.

At the hearing on Mr. Freeman's motion to suppress, Mr. Freeman submitted a two-page proffer of Mr. Banks's testimony, had he been permitted to testify. (Doc. 119 at 247–49; Doc. 113-16.) Mr. Freeman proffered that Mr. Banks would have testified, *inter alia*, that he was familiar with the APEX unit and its focus on the interdiction of guns and drugs. (Doc. 113-16.) He would also have testified that Ms. Lamb should have been removed from the vehicle during the traffic stop because she produced the small bag of

marijuana. (*Id.* at 1–2.) According to Mr. Freeman, Mr. Banks would have testified that the officers' attention to Mr. Freeman instead of Ms. Lamb indicates that the officers stopped Mr. Freeman with the intent to remove him from the vehicle and search it. (*Id.* at 2.)

The Magistrate Judge denied Mr. Freeman's motion for a hearing in support of motion to dismiss based on government interference.[3] (Doc. 150 at 17–22.) The Magistrate Judge determined that Mr. Freeman failed to make a showing of a due process violation sufficient to warrant an evidentiary hearing. (*Id.* at 22.) The Magistrate Judge found Mr. Freeman's showing insufficient because Mr. Banks's testimony was not relevant to the issues raised in Mr. Freeman's motion to suppress. (*Id.*)

### 2. Discussion

Mr. Freeman objects to the Magistrate Judge's conclusions. (Doc. 161 ¶ 7.) Mr. Freeman argues that Mr. Banks's testimony would have been relevant to the credibility of Officer Swanger and Officer Boatley. Mr. Freeman objects to the Magistrate Judge's conclusion that he failed to make a showing of a due process violation sufficient to warrant an evidentiary hearing.

[3] Mr. Freeman did not file a separate motion to dismiss based on government interference.

"Substantial interference with a defense witness's free and unhampered choice to testify violates due process rights of the defendant." *Demps v. Wainwright*, 805 F.2d 1426, 1433 (11th Cir. 1986). "Examples of substantial interference include singling out a witness to assure the witness that he would be prosecuted and convicted of perjury, prohibiting a codefendant from testifying in any manner if he accepts a plea agreement, and threatening that the government will retaliate if the witness continues to testify." *United States v. Duperval*, 777 F.3d 1324, 1335 (11th Cir. 2015) (citations omitted). "Where defendants present evidence to the district court that the government *intimidated* a defense witness a trial court must grant a hearing to determine whether the allegations of intimidation are true." *United States v. Schlei*, 122 F.3d 944, 992 (11th Cir. 1997) (emphasis added); *see also United States v. Perraud*, No. 09-60129-CR-ZLCOH, 2010 WL 298601, at *15 (S.D. Fla. Jan. 20, 2010) (discussing the court's evidentiary hearings held "in accordance with the procedures required by" *Schlei*).

Mr. Freeman set forth his evidence of government intimidation in his reply brief:

> Mr. Freeman has alleged the following facts: (1) James Trey Banks was retained as an expert witness to testify at his suppression hearing; (2) the defense provided notice to the government prior to the hearing that Mr. Banks would testify as an expert witness for the defense albeit no notice was required; Mr. Banks is a critical

> witness to the presentation of the defense at the suppression hearing and (3) Mr. Banks is a critical witness to the presentation of the defense at the suppression hearing.
>
> Notably, the government made the following claims: (1) on March 18, the government alleged that it had a potential conflict with Mr. Banks testifying for the defense; (2) the government further indicated that it would be consulting with supervisors and Department of Justice (DOJ) counsel regarding the witness; (3) on April 4, the government alleged that Mr. Banks had a conflict that would prevent him from testifying for the defense; and (4) the government claimed that the conflict decision was made by the government contractor who employs Mr. Banks and that "the government played no role in the determination".
>
> The government concedes the United States Attorney's Office (USAO) contacted and communicated with the contractor who thereafter determined that Mr. Banks was conflicted from testifying.

(Doc. 86 at 8–9.)

Mr. Freeman also observes that unlawful government intimidation of a defense witness can constitute reversible error without regard to prejudice. *Schlei*, 122 F.3d at 992 (citing *United States v. Goodwin,* 625 F.2d 693, 703 (5th Cir. 1980)); *see also Demps*, 805 F.2d at 1433 (11th Cir. 1986); *United States v. Hammond*, 598 F.2d 1008, 1013 (5th Cir. 1979).

As noted above, the Magistrate Judge reviewed the defense proffer regarding Mr. Banks's testimony and denied Mr. Freeman's request for an evidentiary hearing on the ground that "Banks' testimony is not relevant to any Fourth and Fifth Amendment of Miranda issues raised by Freeman in his

motions to suppress[.]" (Doc. 150 at 22.) For the reasons stated in the R&R, the undersigned agrees that Mr. Banks's proffered testimony would have been, at best, minimally relevant to the matters before the Magistrate Judge in the motion to suppress. (Id. at 17-22.)[4]

A more fundamental problem for Mr. Freeman is that he has not provided sufficient evidence to show that the Government intimidated Mr. Banks to warrant a hearing on the matter. Mr. Freeman's argument is based on the sequence of events after he provided notice to the Government about Mr. Banks's testimony. This procedural history shows that the Government contacted Mr. Banks's employer to evaluate potential *Touhy* implications posed by Mr. Banks's testimony.

---

[4] The Magistrate Judge did not err in considering the relevance and materiality of Mr. Banks's proffered testimony. *See, e.g., United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (holding that a defendant cannot establish a constitutional violation for government deportation of witnesses before trial without "mak[ing] some plausible showing of how their testimony would have been both material and favorable to his defense.") (citing *Washington v. Texas*, 388 U.S. 14 (1967)); *see also United States v. Hoffman*, 832 F.2d 1299, 1303 (1st Cir. 1987) ("There can be no violation of the defense's right to present evidence, we think, unless some contested act or omission (1) can be attributed to the sovereign and (2) causes the loss or erosion of testimony which is both (3) material to the case and (4) favorable to the accused."); *Griffin v. Davies*, 929 F.2d 550, 553 (10th Cir. 1991) ("There must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense.").

The defense speculates that witness intimidation may have occurred. However, Mr. Freeman's allegations fall short of the *Schlei* standard.

The Government's reasonable desire to make a *Touhy*-related inquiry of its own contractor is not inherently suspicious.[5] Although the parties disagree about whether the Government could invoke *Touhy* to bar the testimony of Mr. Banks—a former deputy U.S. Marshal and contractor for the U.S. Attorney's Office that is prosecuting this case—there is nothing in the record to show that the Government's review process amounted to unlawful intimidation of a witness. *Cf. Schlei*, 122 F.3d at 991-93 (holding that an evidentiary hearing on witness intimidation was necessary, where the defendant presented the district court with an affidavit in which the witness averred that the prosecutor threatened to nullify his immunity agreement if he testified for the defense). Further, the Magistrate Judge did not discount Mr. Freeman's concerns but rather held two conferences and an *ex parte* hearing to discuss them.

In sum, the undersigned agrees that Mr. Banks's testimony "would have had little to no probative value, especially considering that subjective

[5] "These [*Touhy*] regulations are valid and can lawfully bar employees from testifying." *United States v. Blair*, 174 F.4th 1309, 1318 (11th Cir. 2026) (citing *Touhy*, 340 U.S. at 468); *see also United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (holding that regulations prohibiting former Department of Justice employees from testifying under certain circumstance are constitutional).

intentions play no role in probable cause Fourth Amendment analysis." (Doc. 150 at 22.) Further, no evidentiary hearing was warranted because Mr. Freeman did not proffer sufficient facts to raise a question of unconstitutional government misconduct in intimidating a defense witness. The Court overrules Mr. Freeman's objection on this issue.

## IV. Conclusion

For the foregoing reasons, Mr. Freeman's objections are **OVERRULED**. (Doc. 161.) The Court **ADOPTS** the Magistrate Judge's Report and Recommendation. (Doc. 150.) Mr. Freeman's motion to suppress (Doc. 19, 30) is **GRANTED IN PART** and **DENIED IN PART** pursuant to the recommendation of the Magistrate Judge. Mr. Freeman's motion for an evidentiary hearing in support of a motion dismiss based on government interference with defense (Doc. 76) is **DENIED**.

**SO ORDERED** this 17th day of November, 2026.

SARAH E. GERAGHTY
United States District Judge